IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MEIXING REN, et al., | ) |
| Plaintiffs, | ) |
| v. | ) C.A. No. 1:13-cv-1110-TSC |
| | ) ECF Case |
| PHOENIX SATELLITE TELEVISION (U.S.), INC., | ) |
| Defendant. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION TO COMPEL**

Plaintiffs Meixing Ren, Ching-Yi Chang, Fangyuan Liu, Haipei Shue, and Taofeng Wang, by counsel and pursuant to Rule 45(d)(2)(B)(i), Fed. R. Civ. P., respectfully submit their Memorandum of Law in support of their Motion to Compel third party Lexero Law Firm to produce documents in response to the Rule 45 subpoena duces tecum.

As set forth below, this Court should grant the motion to compel, because the Plaintiffs' subpoena properly seeks relevant, non-privileged information, *i.e.*, the retainer agreement, billing records, and invoices in a lawsuit that Plaintiffs believe to be retaliatory. Lexero Law Firm's objections are legally meritless, since no privilege exists to those documents, and the documents are highly relevant to Plaintiffs' claims that Phoenix retaliated against Mr. Ren and his counsel by encouraging a co-worker to file a retaliatory lawsuit against Mr. Ren and his attorney.

**I.    Factual and Procedural Background.**

**A.    The Plaintiffs' Lawsuit in This Court.**

The case in this Court is an employment discrimination and retaliation case brought by five current or former employees or interns of defendant Phoenix, who allege that Phoenix

retaliated against them after they supported a female co-worker, Ms. Wang, in filing a charge of discrimination with the EEOC.  In particular, Ms. Wang voluntarily gave Plaintiffs a video which she claimed showed workplace harassment by a supervisor, and she asked them to help her with the EEOC.  *See* Second Am. Complaint, at ¶¶ 39-40 (ECF No. 19).  After Phoenix settled with that co-worker, Phoenix then terminated two of the Plaintiffs, and reduced the job responsibilities of two other Plaintiffs who were current employees.  *Id.* at ¶¶ 41-42, 45-46, 75-77.[1]  The Plaintiffs' federal complaint described their support for their co-worker as a basis for their retaliation claims.  *Id.* at ¶¶ 179-191 (Count I); 195-208 (Count II); 218-222 (Count IV); 224-230 (Count V); 232-240 (Count VI); 243-252 (Count VII); 255-266 (Count VIII).

### B.   Ms. Wang's Lawsuit in the D.C. Superior Court.

Once the federal complaint was filed, counsel for Phoenix wrote to Plaintiffs' counsel to state that: "As such, you and Mr. Ren may well be violating copyright laws . . . . While we do not represent Ms. Wang [the co-worker], Phoenix management has made her aware of the video and advised her to seek legal counsel regarding her rights."  *See* C. DeLorme letter to L. Bernabei (Aug. 2, 2013) (attached hereto as Exhibit 1).  As Phoenix has no in-house counsel in this country, it could only have been their outside counsel who advised Phoenix "management" as to what claims she might have, including copyright infringement claims.  Plaintiffs' counsel responded that there could be no copyright in Ms. Wang's iPhone video, given the lack of creativity in the purely factual recording.  *See* L. Bernabei letter to C. DeLorme, at 2 (Aug. 8, 2013) (attached hereto as Exhibit 2).  Phoenix's counsel responded that "we have advised her to seek counsel to know her rights," thereby making clear that Phoenix was telling Ms. Wang about

---

[1]  One of the five Plaintiffs, Fangyuan Liu, alleges that Phoenix retaliated against her, while she was an intern, by subjecting her to sexual harassment and refusing to hire her as a regular employee after she refused to accede to a supervisor's sexual advances.

2

potential legal claims she could bring against the Plaintiffs for having brought filed the retaliation law suit in this Court. *See* C. DeLorme letter to L. Bernabei, at 1 (Aug. 9, 2013) (attached hereto as Exhibit 3).

Ms. Wang, the co-worker, then sued one plaintiff (Mr. Ren), his lawyer, and his law firm in the D.C. Superior Court. *See* Complaint, *Roe v. Bernabei & Wachtel, PLLC, et al.*, No. 2013 CA 007393 B (D.C. Super. Ct. Oct. 30, 2013) (attached hereto as Exhibit 4). Ms. Wang is represented by Eric Menhart, Esquire, of the Lexero Law Firm, a law firm doing business in the District of Columbia.

The Superior Court held two motions hearings and granted the Rule 12(b)(6) motions to dismiss Ms. Wang's numerous common-law claims for defamation, invasion of privacy, fraud, and emotional distress, for failure to state a claim. *See* Orders, No. 2013 CA 007393 B (Jan. 31, 2014; Apr. 10, 2014) (attached hereto as Exhibit 5). Ms. Wang voluntarily dismissed her federal copyright infringement claims after receiving the motions to dismiss that explained that the federal courts have exclusive jurisdiction over copyright infringement claims.

### C.     **The Plaintiffs' Subpoena on Ms. Wang's Law Firm.**

The Superior Court litigation was further retaliation instigated or motivated by Phoenix and its attorneys against the Plaintiffs for filing their federal complaint. Therefore, Plaintiffs served a Rule 45 subpoena *duces tecum* on the Lexero Law Firm, counsel of record for Ms. Wang in her Superior Court action. *See* Subpoena (May 23, 2014) (attached hereto as Exhibit 6). The subpoena sought relevant information relating to the role that Phoenix had in supporting the Superior Court lawsuit, since it appeared that Ms. Wang, who is not a lawyer, would not have been able to finance the litigation on her own, and her attorney would not have brought these claims absent direction and support from Phoenix, her current employer, or its proxies.

Therefore, information about funding of the law suit and communications between Phoenix and Ms. Wang's counsel are relevant to show that Phoenix used the Superior Court lawsuit as a way to retaliate against Plaintiffs for having filed their federal complaint in this Court. Specifically, the subpoena sought the following categories of documents:

1. All documents that relate to the financing, payment for, or support of litigation by Bingru Wang against Mr. Ren in the case titled *Roe v. Bernabei & Wachtel PLLC, et al.*, Case No. 2013 CA 007393 B, including but not limited to:

   a. The retainer agreement between Lexero and Ms. Wang or any other person acting on behalf of Ms. Wang including but not limited to Phoenix Satellite Television (U.S.) Inc., Phoenix Satellite Television Holdings, Ltd., Ms. Wang's mother, Ms. Wang's father, or any other person acting on Ms. Wang's behalf, including fee schedules for legal services provided by Lexero;

   b. All payment records reflecting payment for legal or other services provided by Lexero relating to *Roe v. Bernabei & Wachtel PLLC, et al.*, Case No. 2013 CA 007393 B;

   c. All billing invoices prepared by Lexero relating to legal services performed by Lexero on Ms. Wang's behalf or *Roe v. Bernabei & Wachtel PLLC, et al.*, Case No. 2013 CA 007393 B;

   d. All checks or other instruments, including credit or debit card processing records, relating to legal services performed by Lexero on Ms. Wang's behalf, including but not limited to legal services performed by Lexero or Mr. Menhart on *Roe v. Bernabei & Wachtel PLLC, et al.*, Case No. 2013 CA 007393 B;

   e. All communications or meetings between or among employees or contractors of Phoenix and Lexero relating to Mr. Ren;

   f. All communications or meetings between or among any person, other than Ms. Wang, and Lexero, relating to Mr. Ren, *Roe v. Bernabei & Wachtel PLLC, et al.*, Case No. 2013 CA 007393 B, or payment for legal services rendered by Lexero;

   g. All communications or meetings between or among Lexero or Mr. Menhart, one the one hand, and Phoenix, on the other hand, including but not limited to communications or meetings between or among Mr. Menhart, M. Carter DeLorme, Lawrence DiNardo, Nikki McArthur, or Jennifer Everett, related to *Roe v. Bernabei &*

4

*Wachtel PLLC, et al., Case No. 2013 CA 007393 B*, or the facts alleged by the Plaintiff in *Roe v. Bernabei & Wachtel PLLC, et al.*, Case No. 2013 CA 007393 B; [and]

      h.     All communications or meetings between or among Lexero or Mr. Menhart, one the one hand, and Phoenix, on the other hand, including but not limited to communications or meetings between or among Mr. Menhart, M. Carter DeLorme, Lawrence DiNardo, Nikki McArthur, or Jennifer Everett, relating to the legal theories or assertions made in an August 2, 2013 letter from M. Carter DeLorme to Lynne Bernabei, attached as Exhibit 1.

*See* Exhibit 6, Att. A, at 4-6.

Plaintiffs had difficulty in serving the subpoena on the Lexero Law Firm. The address of record for Mr. Menhart and the law firm, as used in court pleadings and with the D.C. Bar – 10 G Street, N.W., Suite 710, Washington, D.C. 20002 – is an office suite or office-sharing arrangement that can be rented by the hour, and is used by other individuals and entities. *See* http://www.houroffice.com/ (viewed July 9, 2014). The process server was unable to find anyone at that address who would accept service of process on behalf of the Lexero Law Firm.

Further, it appears that the Lexero Law Firm is <u>not</u> registered to do business in the District of Columbia, and does <u>not</u> have a registered agent for service of process. *See* D.C. Dept. of Consumer and Regulatory Affairs, Business Filings Search (July 8, 2014) (attached hereto as Exhibit 7). While "Lexero Law" was registered on January 10, 2013 as a trade name in Maryland, this was on behalf of a corporation, "Lexero, P.C.," which was dissolved on June 17, 2013. *See* Maryland, Dept. of Assessments and Taxations, Lexero filings (Jan. 10, 2013; June 17, 2013) (attached hereto as Exhibit 8).

Thus, the Lexero Law Firm, which appears to be the corporate successor to Lexero, P.C., had to be served at Mr. Menhart's home address. *See* Affidavit of Service (June 11, 2014) (attached hereto as Exhibit 9).

**D.     The Lexero Law Firm's Objections to the Subpoena.**

The Lexero Law Firm submitted its generic "objections" in letter format:

| Request | Category | Objection |
| --- | --- | --- |
| 1(a) | Retainer agreement | "privileged information" |
| 1(b), 1(c), 1(d) | Payment records; billing invoices | "privileged information;" "irrelevant;" "undue burden on Ms. Wang" |
| 1(e) | Communications or meetings with Phoenix about Mr. Ren | No objection; no responsive documents, other than privileged communications with Ms. Wang |
| 1(f), 1(g), 1(h) | Communications with anyone other than Ms. Wang, about Mr. Ren or the Superior Court lawsuit | No objection; several communications with Carter DeLorme, counsel for Phoenix. |

*See* E. Menhart letter to L. Bernabei (June 27, 2014) (attached hereto as Exhibit 10).  The Lexero Law Firm did not submit a privilege log.

The Lexero Law Firm produced two emails between Mr. Menhart and Mr. DeLorme (counsel for Phoenix).  On April 7, 2014, only three days before the second hearing in the D.C. Superior Court, Mr. Menhart contacted Phoenix counsel regarding Ms. Wang and to request that Mr. DeLorme respond that same day.  *See* Ex. 10, at 6.

Counsel for the Plaintiffs then submitted a detailed rebuttal.  *See* L. Bernabei letter to E. Menhart (June 30, 2014) (attached hereto as Exhibit 11).  As set forth in greater detail in the Legal Argument section, *infra*, counsel explained that under D.C. case law, retainer agreements and billing records are not protected by the attorney-client privilege.  *Id.* at 1 (collecting cases). To the extent that documents did have information relating to litigation strategy or other privileged communications, such information could be redacted.  *Id.*  Counsel further explained that the "relevancy" objection was unfounded, since it was clear that Phoenix management had met with Ms. Wang to discuss her legal claims, which she then brought against Mr. Ren and his

6

attorneys – claims that were readily dismissed by the Superior Court. *Id.* at 1-2. Finally, counsel explained that the "undue burden" objection on behalf of Ms. Wang was meritless, since the subpoena was not directed to Ms. Wang, and did not compel her to produce anything; given that the Superior Court lawsuit lasted only a half-year before being dismissed, such records in the possession of the Lexero Law Firm would not be voluminous. *Id.* at 2. Mr. Menhart did not submit any response to the cited case law.

On July 7, 2014, counsel had a conference call with Mr. Menhart, but were unable to narrow the scope of the dispute, and Mr. Menhart did not provide any contrary legal authority supporting his position. After that call, Mr. Menhart proposed that either (1) he would "supply an affidavit, expressing that Phoenix had nothing to do with any financing of the Roe v. Bernabei litigation," or that (2) "ALL parties in the Roe v. Bernabei matter disclose their financial arrangements with their respective counsel, including all applicable payments, retainer agreements, insurance policies and other relevant documents, to the other parties, subject to a protective order." *See* E. Menhart emails, at 2 (July 7-8, 2014) (attached hereto as Exhibit 12).

Counsel for Plaintiffs responded that the first alternative was too narrow, and the second alternative improperly sought discovery from the requesting party – discovery that Phoenix itself had requested in the federal lawsuit, and to which the Plaintiffs had properly objected as not being relevant to their claims in this Court. *Id.* at 1. Ms. Wang, a non-party in this Court, has no right to seek or demand discovery from a party in the *Ren* case pending before this Court. Mr. Menhart is simply carrying out Phoenix's request for the Plaintiffs' billing records, in order to object to providing his own. Phoenix counsel would have had to advise Mr. Menhart to make this request, since neither his client nor he were part of the *Ren* litigation.

## II.     STANDARD OF REVIEW.

The D.C. Circuit has held, regarding Rule 45 subpoenas, that the "burden of proving that a subpoena is oppressive is on the party moving to quash. . . . This is a heavy burden." *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403 (D.C. Cir. 1984) (district court erred in quashing third party subpoena to State Department).  As Judge Walton recently stated, "The burden lies on the party resisting discovery to show that the documents requested are either unduly burdensome or privileged." *In re Denture Creams Prods. Liab. Litig.*, 292 F.R.D. 120, 123 (D.D.C. 2013).  The rationale is that "a reasonable inconvenience [to the third party] must be borne to further the goals of discovery – the making available to litigants all relevant and available information." *Northrop Corp.*, 751 F.2d at 407.

Moreover, "discovery obtained from a nonparty pursuant to Rule 45 has 'the same scope as provided in Rule 26(b), thus promoting uniformity.'" *Denture Creams*, 292 F.R.D. at 123 (quoting Advisory Committee Notes to Rule 45).  Since "relevancy is liberally construed" at the discovery stage, *id.*, "the term relevance at the discovery stage is broadly interpreted to include information which is not admissible at the trial if the discovery appears to be reasonably calculated to lead to the discovery of admissible evidence." *Id.* (quoting *Convertino v. U.S. Dept. of Justice*, 565 F. Supp. 2d 10, 12 (D.D.C. 2008)).

Therefore, for a Rule 45 subpoena, "a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party." *Id.* (quoting *Hesco Bastion Ltd. v. Greenberg Traurig LLP*, No. 09–0357, 2009 WL 5216932, at *4 (D.D.C. Dec. 23, 2009)).

### III.     LEGAL ARGUMENT.

### A.     The "Privilege" Objection is Unfounded.

This Court should hold that the "privilege" objection asserted by the Lexero Law Firm to Document Requests Nos. 1(a) (retainer agreement) and 1(b)-(d) (invoices and payment records) is legally meritless. It is settled law in the District of Columbia that retainer agreements and billing records are <u>not</u> protected by the attorney-client privilege. *See, e.g.*, *Feld v. Fireman's Fund Insurance Co.*, 292 F.R.D. 129, 137-38 (D.D.C. 2013); *Berliner Corcoran & Rowe, LLP v. Orian*, 662 F. Supp. 2d 130, 134-35 (D.D.C. 2009).

As Judge Bates recently explained, communications about fees and retainer agreements are presumptively not privileged:

> The privilege protects only communications between a client and his attorney that relate to legal advice and are intended to be confidential at the time they are made. . . . And it does not generally protect communications relating solely to the payment and amount of attorneys' fees.
>
> So, for example, the following categories of communications are not shielded from disclosure by the privilege: . . . information on rates relayed by Feld to Fulbright with the intent that it then be conveyed to FFIC; and communications regarding "fees, costs and invoices," including any fee arrangement between Feld and Fulbright, that do not reveal litigation strategy or other confidences about the Underlying Action.

*Feld*, 292 F.R.D. at 137-38 (citations omitted).

Judge Kollar-Kotelly, after reviewing the relevant case law, similarly concluded that information about retainer agreements and payments for legal services was not privileged:

> The weight of authority holds that communications relating solely to the payment of attorneys' fees are not covered by the attorney-client privilege unless they reveal confidences about the nature of legal services rendered. *See Montgomery County v. MicroVote Corp.*, 175 F.3d 296, 304 (3d Cir. 1999) (holding that attorney fee agreement letter is not privileged); *Chaudhry v. Gallerizzo*, 174 F.3d 394, 402 (4th Cir. 1999) ("Typically, the attorney-client privilege does not extend to billing records and expense reports."); *Lefcourt v. United States*, 125 F.3d 79, 86 (2d Cir. 1997) ("As a general rule, a

> client's identity and fee information are not privileged."); *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992) (holding that billing correspondence is not protected unless it "also reveal[s] the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law"). To the extent that the statements at issue pertain solely to the timing of payments and promises to pay and do not implicate the nature of services provided or other confidential information, they are not subject to the attorney-client privilege.

*Berliner Corcoran*, 662 F. Supp. 2d at 134; *accord Montgomery v. Leftwich, Moore & Douglas*, 161 F.R.D. 224, 227 (D.D.C. 1995) ("It is well established that the attorney-client privilege is generally not violated by requiring the disclosure of billing arrangements 'because such information ordinarily reveals no confidential professional communication between attorney and client.'") (quoting *In re Osterhoudt*, 722 F.2d 591, 593 (9th Cir. 1983)).

As Plaintiffs noted, to the extent that the invoices did include specific entries relating to litigation strategy or attorney-client communications, then those individual entries could be redacted. *See* Ex. 11, at 1.

Moreover, Rule 45(e)(2)(A) expressly <u>requires</u> that the respondent provide a privilege log or its equivalent in order to assert the attorney-client privilege:

> (2) Claiming privilege or protection.
> (A) Information withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
> (i) expressly make the claim; and
> (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

*See* Rule 45(e)(2)(A). As Magistrate Judge Facciola noted, in granting a motion to compel production of a law firm's billing records, this "rule is obviously mandatory. Failure to comply with it 'is deemed to waive the underlying privilege claim.'" *GFL Advantage Fund, Ltd. v.*

*Colkitt*, 216 F.R.D. 189, 195 (D.D.C. 2003) (quoting *In re Grand Jury Subpoena*, 274 F.3d 563, 576 (1st Cir. 2001)).  In *GFL Advantage*, the law firm (Womble Carlyle) refused to submit a privilege log, which Magistrate Judge Facciola held was improper:

> It is impossible to understand how any such materials could possibly fall within the attorney-client privilege . . . . The apparent inapplicability of the privilege on its face increases, rather than decreases, the need for a privilege log.

*Id.* (granting motion to compel law firm records).

In *GFL Advantage*, the third party law firm's failure to provide a privilege log, combined with the fact that billing records are presumptively not privileged, *id.* at 196, ("billing records are usually generated for ordinary business purposes and merely include who the bill is being sent to and how the fee was paid"), justified granting the motion to compel.  *Id.*  The same result is required here, where the Lexero Law Firm failed to provide a privilege log, yet asserted privilege as to retainer agreements and billing records that are presumptively not privileged.

Therefore, this Court should overrule the privilege objections to Subpoena Requests Nos. 1(a), 1(b), 1(c), and 1(d), and order the production of the responsive documents.

      **B.**     **The "Irrelevant" Objection is Meritless.**

This Court should further find that the boilerplate relevancy objection is meritless and that the Lexero Law Firm has not satisfied its "heavy burden" of showing that the discovery should not be allowed.  Mr. Menhart asserted generically that "the information is irrelevant to the claims set forth in the Complaint in the *Phoenix* matter," *see* Ex. 10, at 1, but did not address the fact that the lawsuit in this Court arose <u>because</u> several of the Plaintiffs assisted Ms. Wang with her EEOC charge, that Phoenix retaliated against those Plaintiffs for that assistance, *see* Second Am. Complaint, at ¶¶ 39-42, 45-46, 75-77, and that Ms. Wang (who has since received a greater share of prestigious reporting assignments from Phoenix after settling her claims), was then used

11

by Phoenix to escalate the retaliation against the Plaintiffs by suing Mr. Ren, Plaintiffs' lawyer, and their law firm.  Further, Phoenix's counsel admitted that both Phoenix and he (or other attorneys at his firm) advised Ms. Wang on legal claims to bring, including copyright claims, which she later brought in the D.C. Superior Court.  *See* Ex. 1, at 2; Ex. 3, at 1.

Plaintiffs' counsel advised Mr. Menhart, "Phoenix's involvement in, and support of Ms. Wang's litigation against Mr. Ren – support which is likely to include paying her legal bills – is therefore not only probative evidence of retaliatory intent on the part of Phoenix, but [also] . . . indicates that Mr. Ren possesses additional claims . . . against Phoenix."  *See* Ex. 11, at 2.

It is settled law that "relevancy" objections, even those interposed by a third party opposing discovery, are outweighed by the presumption that, "for purposes of discovery, relevance is liberally construed," *Denture Creams*, 292 F.R.D. at 123, regardless of whether the evidence might be admissible at trial, so long as it "appears reasonably calculated to lead to the discovery of admissible evidence."  Rule 26(b)(1), Fed. R. Civ. P.  Here, Plaintiffs have made the requisite showing that the information sought – how Phoenix may be funding or otherwise directing, supporting, or encouraging the *Roe* lawsuit in the D.C. Superior Court – proves Phoenix's animosity against Plaintiffs, including retaliation for filing this case in this Court.

Therefore, this Court should overrule the relevancy objections to Subpoena Requests Nos. 1(b), 1(c), and 1(d), and order the production of the responsive documents.

    **C.**    **The "Undue Burden" Objection is Meritless.**

Finally, this Court should find that the "undue burden on Ms. Wang" objection is meritless.  As a threshold matter, the subpoena does not command Ms. Wang herself to produce anything.  Instead, the subpoena only commands the Lexero Law Firm to produce certain records – records that the firm is required to keep, and records that are unlikely to be voluminous, given

that the D.C. Superior Court case was not filed until late October 2013.  Moreover, as the D.C. Circuit explained, in overruling burdensomeness objections raised by the State Department to a Rule 45 subpoena, even though "the volume of documents it claims it must search is extraordinary, volume alone is not determinative," and given that records are "organized topically," State had not met its burden of showing that the subpoena should be quashed. *Northrop*, 751 F.2d at 404.  Here, of course, the billing and related records relating to the representation of a single plaintiff over the course of less than a half year are assuredly far less voluminous than the State Department records at issue in *Northrop*.

Therefore, this Court should overrule the "undue burden" objections to Subpoena Requests Nos. 1(b), 1(c), and 1(d), and order the production of the responsive documents.

## IV. <u>CONCLUSION.</u>

For the foregoing reasons, this Court should find that the Lexero Law Firm's privilege, relevancy, and burden objections to the Rule 45 subpoena *duces tecum* are meritless, and should order the Lexero Law Firm to produce its retainer agreements, invoices, and other billing records, in response to Request Nos. 1(a), 1(b), 1(c), and 1(d).

        Respectfully submitted,

        /s/ Lynne Bernabei
        _____
        Lynne Bernabei (D.C. Bar # 938936)
        Bernabei & Wachtel, PLLC
        1775 T Street, NW
        Washington, D.C. 20009-7102
        (202) 745-1942
        Bernabei@bernabeipllc.com
            *Counsel for Plaintiffs*

DATED:  July 11, 2014

Case 1:13-cv-01110-TSC   Document 28-1   Filed 07/11/14   Page 14 of 14

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of July, 2014, a copy of the foregoing Plaintiffs' Memorandum of Law was electronically filed through this Court's ECF system, and was served on counsel for Defendant and counsel for the Lexero Law Firm by both electronic mail and first class mail, postage prepaid, to:

M. Carter DeLorme, Esquire
Jones Day
51 Louisiana Ave. NW
Washington, D.C. 20001
cdelorme@JonesDay.com
    *Counsel for Defendant*

Eric Menhart, Esquire
Lexero Law Firm
10 G Street, N.E., Suite 710
Washington, D.C. 20002
p17a19@Lexero.com
Eric.Menhart@Lexero.com
    *Counsel for the Lexero Law Firm*


                                       */s/ Lynne Bernabei*
                                       _____
                                       Lynne Bernabei
                                       Bernabei & Wachtel, PLLC
                                       1775 T Street, N.W.
                                       Washington, D.C. 20009-7102