IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MEIXING REN, et al.<br><br>v.<br><br>PHOENIX SATELLITE TELEVISION (U.S.), INC. | 1:13-cv-1110-TSC |

**THIRD PARTY LEXERO LAW'S OPPOSITION TO
PLAINTIFFS' MOTION TO COMPEL**

Third-party Lexero Law, through undersigned counsel, Eric J. Menhart, Esq., hereby opposes the "Motion to Compel" ("Motion") filed by Plaintiffs and their counsel.

Undersigned makes all efforts to maintain a certain level of décor in any court filing. That being said, undersigned does plan to speak frankly herein as to the Plaintiffs' requests and conduct.

## I. INTRODUCTION

The Motion, as filed, is filled with half-truths, selective arguments, and, regrettably, outright lies. Ms. Bernabei, a defendant in an ongoing litigation, has fallen victim to her own delusions that the suit filed against her and her law firm arises from anything other than Ms. Bernabei's gross incompetence and negligence. Rather than continue to defend her actions on the merits, Lynne Bernabei is now pursuing her own personal vendetta against Ms. Roe and undersigned by making discovery requests that are solely intended to harass and delay.

## II. RELEVANT FACTUAL BACKGROUND IN ROE V. BERNABEI

In order to understand the irrelevancy of the present request, some factual background about Ms. Bernabei's prior self-serving actions is appropriate.

Third party Jane Roe[1] began working for Defendant Phoenix as a journalist in 2011. Roe's duties at her job included, among other things, covering U.S. foreign policy and national news stories.  On or about September 6, 2012, Ms. Roe was sexually harassed by a Supervisor employed by Defendant. The Supervisor aggressively moved towards Ms. Roe and touched her inappropriately. Among other things, the Supervisor demanded that Roe "hug" him and "lean [his] body against" Roe. In response, Roe repeatedly told the Supervisor to "let me leave" and "I need to go now" and "I really need to go now." The entire interaction lasted for approximately two minutes, and Chinese language was spoken throughout.

Thinking quickly, Ms. Roe managed to record the entire interaction on her iPhone's video camera, which was hidden in her purse. Ms. Roe made quick creative judgments as to the sight and sounds the phone would likely record by leaving the phone in her purse. Ms. Roe let her phone record the sound and as much visual footage as possible without being obvious to the Supervisor. Roe also made efforts to escape her assailant without disclosing the location of the phone or the ongoing recording. The resulting video was saved on her phone. See Exhibit #1, Video File.[2] Ms. Roe acquired a federal copyright registration for her work on October 3, 2013. See Exhibit #2, Copyright Registration.

Armed with her video, Ms. Roe began considering an employment law claim. Despite her rights being violated, Ms. Roe had no interest in publicly disclosing the interaction or her video, but felt obligated to ensure that the Supervisor's actions did not go without punishment. Even before retaining counsel and pursuing her attacker, Ms. Roe thought carefully about the ramifications of her actions. She was concerned about the effects on her job and interpersonal relationships. Ms. Roe contacted several other employees of Defendant, including Mr. Ren,

---

[1] Pseudonym.
[2] The video can be separately submitted to the court under seal, if the court desires.

seeking opinions as to her options. Upon viewing the video, Mr. Ren, as well as several other employees, agreed to assist Ms. Roe in her EEOC claim. Mr. Ren also requested a copy of the video. Ms. Roe provided a copy of the video to Mr. Ren via email on or about September of 2012.

After careful thought, Ms. Roe retained counsel and prepared to bring her claim with the EEOC. Although the video was shown to the EEOC, Ms. Roe did not provide a copy of the video to that organization. Shortly thereafter, Ms. Roe's claims against Defendant were settled privately. Ms. Roe was so protective of the video that her sexual harassment case was settled without showing the video to Defendant. Roe kept the video only as a "means of last resort" should it have been necessary to prove her version of the story. Ms. Roe did not use, share, display or publicly release the video for any purpose after her case was settled, consistent with her wishes to peacefully move on with her employment responsibilities after addressing the sexual harassment incident with the EEOC.

On or about October 2012, Mr. Ren and the other Plaintiffs retained Bernabei and B&W to represent them against Defendant in the present matter. This present suit was subsequently filed in July of 2013. Upon the filing of the present lawsuit, and before any judgment had been made about the validity of the claims therein, Plaintiffs and Bernabei began aggressively mounting an out-of-court public relations campaign against Defendant. On July 22, 2013, Bernabei issued a press release in Chinese. See Exhibit #3, Chinese Press Release. Bernabei issued the same press release in English. See Exhibit #4, English Press Release. Bernabei was the only listed contact on the press releases. Id.

On information and belief, Bernabei and B&W received a copy of Plaintiff's video from Ren prior to the issuance of the press releases. Thereafter, when contacted by inquiring members

3

of the press, Bernabei and B&W provided copies of the video as well as the Complaint filed in this matter. Upon providing the materials, Bernabei conducted numerous interviews with members of the press.

Numerous press outlets were drawn to the video. On July 26, 2013, France 24 covered the story. See Exhibit #5, France24 Screenshot. Hong Kong Standard covered the story on the same day. See Exhibit #6, Hong Kong Standard Screenshot (quoting Bernabei, who estimates that total damages for Plaintiffs in this suit could "top US$2 million").

On July 30, 2013, B&W published a full copy of the Complaint in this matter on its blog. See Exhibit #7, B&W Blog Post. Such publication was completely unnecessary and unrelated to Bernabei's duties in this judicial proceeding.

MotherJones.com issued an article about the matter on August 1, 2013. See Exhibit #8, MotherJones.com Screenshot (referring to Ms. Roe with the pseudonym "Anne," noting that the video was "reviewed by Mother Jones" and quoting B&W as a source).

WUSA9 in Washington, D.C. had a news story on August 1, 2013. See Exhibit #9, WUSA9 Screenshot. The WUSA9 story is still available on its website. See Former Bureau Chief Allegedly Preyed on Female Interns and Reporters, available at http://www.wusa9.com/news/article/268898/373/Sex-Scandal-in-DC-inv (last visited July 22, 2014). Of particular note, the WUSA9 video story uses small portions of Plaintiff's video as provided by Defendants to that media outlet.

On or about August 1, 2013, consistent with the timing of the other publications, Bernabei or B&W created or assisted in creating a microblogging account and corresponding website, on which the full version of the Plaintiff's video, as well as her full name, appear. See Exhibit#10, Microblog in Chinese. An English version, initially provided by a machine-

translation, is also attached. See Exhibit #11, Microblog in English. The website continues to be displayed to the world. See Bernabei Microblog available at http://t.163.com/Bernabei (last visited December 31, 2013). The microblog features a picture of Ms. Bernabei, links to B&W's website, and lists Bernabei's status as a Harvard Law School graduate. Id.

In addition to displaying the full version of the video, Bernabei provides a separate translation of the Chinese language spoken in the video in a post on August 1, 2013. See Exhibit #12, Microblog Translation.

Also on August 1, 2013, Bernabei provided Plaintiff's video to 163.com, a major Chinese Internet portal web site, and participated in an interview about the case. See Exhibit #13, 163.com Interview in Chinese. A machine-translated English version is also attached. See Exhibit #14, 163.com Interview in English. Again, the material remains readily available to the public on the Internet. See Bernabei Interview available at http://zhenhua.163.com/13/0801/14/956TFFQH000464R2.html (last visited July 22, 2013). As with the microblog, the full version of the video is posted along with the news story. Id. Ms. Bernabei also participates in an interview with a reporter, answering several questions about the case and providing Plaintiff's full name to the reporter, which appears on the same page that the video is posted. Id. On information and belief, Defendants participated in numerous other similar interviews with different press outlets, which Plaintiff will pursue in discovery in the ongoing litigation or in the upcoming copyright infringement case.

As demonstrated, Defendants published Plaintiff's video with numerous members of the press and the public, outside of judicial proceedings, without any express or implied authorization from Ms. Roe. Moreover, Bernabei aggressively and intentionally linked Roe's

name with the video that would not otherwise have been immediately associated with Roe's true identity.

Roe became aware of the video in August of 2013 when she was contacted by colleagues, friends, and members of the public that had seen the video online. Numerous people asked her about the video and her association with it. Upon hearing of the public release of the previously private video, Ms. Roe suffered severe emotional distress, knowing that one of her darkest moments was online forever. Ms. Roe immediately feared for her long term relationships with friends, family, and community members. Most importantly, Ms. Roe feared for her career prospects in the hypercompetitive television journalism industry.

Bernabei knew the factual background of the video, knew to whom the video belonged, and knew that dissemination of the video would never be approved by Ms. Roe. Defendants ignored Ms. Roe's intellectual property and privacy rights for purposes of improving their own financial opportunities. Most egregiously, Defendants Bernabei and B&W, attorneys that regularly represent victims of sexual harassment <u>knew</u> that their actions were likely to cause emotional distress to Ms. Roe.

Even given that factual background, Bernabei continues to maintain that, somehow, her deplorable actions were totally acceptable and she is now being "targeted" by Phoenix as a result of her filing of the present lawsuit.

<u>Ms. Bernabei was sued for one reason, and one reason only: she took aggressive actions that were completely unnecessary and violated the rights of third parties</u>. If Lynne Bernabei doesn't send out the video and the press release, the lawsuit never happens. She had complete control. Given that control, she intentionally decided that she was more interested in "getting her

name in the paper" and "litigating in the court of public opinion" and serving her own selfish interests than respecting the litigation process, the Defendant, or Ms. Roe.

While the facts are telling enough, Bernabei has already had similar "conspiracy arguments," that she was somehow "targeted" by Ms. Roes summarily rejected by a D.C. Superior Court Judge. In <u>Roe v. Bernabei</u>, Lynne Bernabei argued that her clear actions of negligence were somehow "protected by the D.C. Anti-SLAPP Act, because it constitutes an 'act in furtherance of the right of advocacy on issues of public interest.'" <u>See</u> <u>Special Motion of Defendants to Dismiss the Complaint Pursuant to the D.C. Anti-Slapp Statute</u>, <u>Roe v. Bernabei & Wachtel, PLLC</u>, 2013 CA 007393 B (D.C. 2013) (December 18, 2013). Judge Ross summarily rejected such an argument, plainly finding that "that Defendants' actions were not 'on issues of the public interest.'" <u>See</u> Exhibit 15, Order in Roe v. Bernabei. Moreover, Judge Ross, despite eventually declining to issue sanctions against Bernabei and her counsel, opined that it was still a "close call."

Whether Ms. Bernabei and her firm are held liable for her self-serving actions is soon to be determined. Whether Ms. Bernabei's actions were defensible according to any reasonable moral or ethical level, is, in undersigned's opinion, already perfectly clear.

### III. BERNABEI'S MISSTATEMENTS IN THE MOTION

Regrettably, if unsparingly, the Motion is filled with half-truths, selective showings, and other problems that deserve this Court's attention.

First, Bernabei states "On July 7, 2014, counsel had a conference call with Mr. Menhart, but were unable to narrow the scope of the dispute." <u>See</u> Motion at 7. There was no opportunity to narrow the dispute, because Plaintiffs' counsel had absolutely zero interest in resolving it. Menhart, working in good faith, proposed two ways to resolve the matter, which Plaintiffs

summarily rejected. See Motion, Exhibit #12. Plaintiffs' counsel "were unable to narrow the scope of the dispute" because they wanted to file their Motion to Compel, creating a burden on undersigned, Ms. Roe, and this Court.

Second, despite reference to the Roe v. Bernabei matter, Plaintiffs' counsel withholds the fact that the matter is presently pending appeal. The appeal was filed, literally, hours after the dismissal. The Roe v. Bernabei case is not over, despite Bernabei's suggestions to the contrary. Moreover, the federal copyright claims are alive and well.[3] No doubt, Ms. Bernabei will have another conspiracy theory when that suit is filed despite Ms. Wang's copyright claims being unusually strong, as demonstrated above.[4]

Third, Bernabei suggests that she had "difficulty" serving the subpoena. Bernabei was well aware of undersigned's email address, phone number, and fax number. She and her other firm members regularly communicated with undersigned using any one of those methods. She made use of none of those contact options to offer undersigned the opportunity to accept service, billing her clients for personal service that was wholly unnecessary. Second, despite having the apparent ability to find undersigned's prior corporate history in Maryland, Bernabei was "somehow" unable to find Lexero LLC[5] and serve the registered agent accordingly. If undersigned were a client of one of the "Best Lawyers in America," it would be concerning that my attorney was apparently incapable of doing very simple corporate research. This is

---

[3] The case is likely to be filed shortly, fueled in part by Bernabei's wholly incorrect claim that the video is not subject to copyright protection or that the Feist case, excluding alphabetized lists from copyright protection, will somehow provide protection from the copyright infringement claims. See generally Feist Pubs., Inc. v. Rural Tel. Svc. Co., Inc., 499 U.S. 340 (1991).

[4] Indeed, Mr. Ren may also have a viable malpractice claim against Ms. Bernabei and her firm if he is held liable in any of the ongoing actions.

[5] Undersigned's prior oversight in formally registering Lexero LLC as a foreign corporation in DC has been rectified. The error is regrettable, but was handled promptly upon realization of the oversight.

particularly true given the numerous research tools and public records that make such a task quite easy.

Next, undersigned's office is staffed every business day from 9:00 AM - 5:30 PM. Undersigned routinely accepts packages and service of papers there. On information and belief, Bernabei never asked the process server to even attempt delivery of the subpoena at undersigned's office address, because she knew service would be successful. Regardless, the suggestion that there was "difficulty" is laughable. Bernabei intentionally manufactured some "difficulty," somehow failed to identify Lexero LLC's registered agent, and then spent an entire page of the Motion discussing a wholly irrelevant topic. Lynne Bernabei wants to play games and the service issue is yet another example of her unscrupulous conduct.

Fourth, <u>undersigned rejects, in the strongest possible way, that his professional judgment was in any way shaped by any third party interference</u>. Lynne Bernabei has absolutely no grounds to allege that undersigned filed the Roe matter for any other reason than that the case has legal merit. Bernabei's suggestion that undersigned is somehow serving as a pawn to Phoenix is not only wrong, it's personally offensive. Bernabei has not demonstrated one shred of evidence that supports her contentions. This is not surprising, because no such evidence exists. <u>The entire allegation that Phoenix has any role in the Roe v. Bernabei matter is delusional and a complete figment of Ms. Bernabei's imagination</u>.

Undersigned routinely handles copyright, trademark and privacy matters in state and federal courts across the country. Undersigned rejects, on an almost daily basis, numerous similar claims proposed by potential clients. Indeed, not only is the present privacy case against

Lynne Bernabei viable, but the copyright infringement claims are strong enough that they are likely to be resolved against her and her law firm at the summary judgment stage.[6]

Lynne Bernabei's claims that undersigned was influenced by Phoenix in the litigation, without any trace of evidence to support her claims, tells the court all it needs to know about Bernabei's credibility on this issue.

## IV. THE SUBPOENA

While the above background should be more than sufficient to outright reject the Motion to Compel, undersigned submits a few additional notes for the Court's consideration.

### A. Undersigned Responded and Conferred in Good Faith

Despite a total lack of merit to the subpoena request, undersigned made all reasonable efforts to work within Plaintiffs' requests, making all efforts to resolve the matter quickly and easily. Undersigned stands by both his original response (Motion, Exhibit #10) and his subsequent efforts to find resolution (Motion, Exhibit #12). Indeed, undersigned further stands by his impression of July 8, 2014, that it was "quite clear [Plaintiffs' counsel is] not interested in working it out given the call and the below." Id. Indeed, the record demonstrates Plaintiffs made absolutely no attempts to resolve the matter. Yet again, these facts are entirely consistent with undersigned's contention that the subpoena is designed to harass and delay.

### B. Bernabei Seeks a Litigation Advantage in the Ongoing Roe v. Bernabei Matter

The true purpose of the outstanding subpoena request is for Lynne Bernabei to obtain information that will be used for her own personal gain. Similar to her use of Roe's video, Bernabei is using her substantial legal power to create a litigation advantage in the ongoing Roe v. Bernabei matter, as opposed to seeking any truly necessary information. If Bernabei received

---

[6] Lynne Bernabei will no doubt disagree. The parties will resolve this matter via the separate copyright action.

the information from undersigned, there is no doubt that it would immediately be used to assist Bernabei to make litigation decisions intended to drive up Roe's litigation costs. While the true goal of the subpoena is to harass and delay, this additional information is an "added bonus" from Bernabei's perspective.

### C. Alternatively, Undersigned's Proposed Affidavit is Attached

Undersigned, as an officer of the court, submits hereto a proposed affidavit that the court may consider as a possible response to the subpoena. See Exhibit #16, Affidavit of Eric Menhart. Of course, undersigned offered to do this already, suggesting he "supply an affidavit, expressing that Phoenix had nothing to do with any financing of the Roe v. Bernabei litigation." See Motion, Exhibit #12. The affidavit is more than sufficient to resolve the concerns, however meritless, Plaintiffs may have about the Roe v. Bernabei litigation.

### V. CONCLUSION

Undersigned regrets the barefaced nature of the language in this filing. However, in the present case, the remaining subpoena request is entirely irrelevant, completely devoid of evidence, intended solely as a burden, and easily resolved via other means. Undersigned has made all reasonable efforts to respond in good faith, yet Bernabei's constant nuisance continues. Undersigned implores the court to not only deny the present request, but carefully consider Bernabei's credibility on these and other issues as the current litigation continues.

Respectfully submitted,                                                                 Dated: July 22, 2014

_____
Eric J. Menhart (Bar ID: 975896)
Lexero Law
10 G St NE Suite 710
Washington, D.C. 20002
Phone: 855-453-9376
Fax: 855-453-9376

**CERTIFICATE OF SERVICE**

     I hereby certify that on July 19, 2014 copy of the foregoing was filed electronically and all parties of record were automatically notified via that system.

_____
Eric J. Menhart