UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MEIXING REN, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-cv-1110 (TSC) |
| | ) | |
| PHOENIX SATELLITE TELEVISION (US), INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Presently before the court is Defendant's motion for an order compelling Plaintiffs to submit to a mental examination by Defendant's expert Dr. Mark Mills pursuant to Fed. R. Civ. P. 35. (ECF No. 61). Plaintiffs concede that a mental examination is proper under the circumstances here, but seek to have the court impose certain conditions on the examination. Specifically, Plaintiffs seek:

- Permission to have Plaintiffs' counsel present at the site of the examination (but outside the room where the actual examination will take place);[1]

- Limitation on the duration of the examination; and

- Disclosure of the particular tests, or the universe of potential tests, to be administered to the Plaintiffs.

---

[1] Alternatively, Plaintiffs initially suggested creation of an audio or video recording of the examinations. (Def Mot. Ex. E). They appear to have withdrawn that request in light of the court's observations during the March 5, 2015 hearing that the court was not inclined to permit recording of the examination. The court's analysis below concerning the presence of attorneys in the examination would have applied equally to the recording request which appears to have been withdrawn.

1

The court preliminarily addressed these requested conditions at a hearing in this matter held on May 5, 2015.  There the court expressed its skepticism that Plaintiffs would prevail in their first two demands, but permitted briefing on all of the issues.  Plaintiffs have submitted their opposition (ECF No. 65), and, at the hearing, Defendant elected not to seek an opportunity to reply.

Courts generally do not permit attorneys or other experts to be present during an examination.  *Abdulwali v. Wash. Metro Area Transit Auth.*, 193 F.RD. 10, 13 (D.D.C. 2000) ("the greater weight of authority favors the exclusion of the Plaintiff's attorney from the conduct of a Rule 35 examination").  Similarly, the typical procedure is not to create a recording of the examination.  *Miles v. Univ. of the Dist. of Columbia*, No. 12-cv-378, 2014 WL 2142458, at *2 (D.D.C. May 2, 2014); *Lerer v. Ferno-Washington, Inc.*, No. 06-cv-81031, 2007 WL 3513189, at *1 (S.D. Fla. Nov. 14, 2007) ("Rule 35 and the adversary process provide other safeguards for plaintiffs who submit to Rule 35 examinations.  Plaintiffs receive a Rule 35 examination report and then have the opportunity to depose the physician, cross-examine him or her, and introduce contrary expert evidence").  Both of these general rules give way to exceptions upon a showing of specific need.  *See, e.g.*, *Convertino v. U.S. Dep't of Justice*, 669 F. Supp. 2d 8, 11 (D.D.C. 2009) (permitting videotape recording of examination when requested by the examining doctor); *Tarte v. United States*, 249 F.R.D. 856, 859 (S.D. Fla. 2008) ("the party seeking to have the observer present bears the burden of demonstrating 'good cause' for the request"); *Doe v. District of Columbia*, No. 03-cv-1789, 2005 WL 3828731, at *1 (D.D.C. Aug. 15, 2005) (permitting videotape of medical examination of ten-year old plaintiff who was alleged victim of sexual abuse to ensure the examination "is performed tactfully and properly, and it will serve as an accurate record of the examination.").

Plaintiffs, based on the affidavit of their expert, assert that a psychiatric evaluation by an agent of Plaintiffs' former employer carries a risk of "re-traumatization." (Pls. Opp'n at 8). They further assert that the presence of counsel at (but not in) the examination "will protect against actual or perceived abuses of Plaintiffs during the examination" and will also "promote the resolution of any language-based misunderstandings that may arise during the course of the examinations and thereby ensure a more accurate record of the examinations." (*Id.* at 9). These concerns are heightened not only due to a language barrier but also a cultural barrier: Plaintiffs are unaccustomed to "American-style psychological examinations and procedures." (*Id.* at 3).

Plaintiffs' arguments in support of the presence of counsel do not carry Plaintiffs' burden in overcoming the general rule. The purpose of Rule 35 examinations is to "level the playing field" for the parties. *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 363 (D. Colo. 2004). Given this purpose, the primary flaw with Plaintiffs' arguments is that they apply with equal force to the examination already conducted by Plaintiffs' own expert. To the extent the Plaintiffs encounter difficulty expressing themselves in English, or overcoming a cultural barrier regarding the open and honest sharing of emotions, those difficulties inevitably arose during the examination conducted by Plaintiffs' expert. There were likely distortions in translations between Plaintiffs and their expert, just as Plaintiffs assume there will be between Plaintiffs and Defendant's expert. The remedy for those distortions is through thorough examination of the expert at deposition or trial, not the presence of a third party sitting outside the door. The court is confident that Defendant's expert Dr. Mills, who has practiced medicine for nearly 40 years and has completed "thousands of clinical psychiatric evaluations," (Mills Aff. ¶ 2 & Ex. A), is more than capable of conducting an examination in a manner that is appropriate to the particular mental health needs of the Plaintiffs

3

(even more so now that Defendant is on notice of Plaintiffs' particular concerns). In addition, the court notes that since all parties agree that breaks will be appropriate and necessary during the lengthy examination, Plaintiffs' counsel would still have the opportunity to converse with their clients even if they remain outside the examination room.

Plaintiffs oppose the Defendant's request for each examination to last from six to eight hours (Mills Aff. ¶ 10) and indicate that their expert examined each Plaintiff for 2 hours. (Pls. Opp'n at 7). Courts are skeptical of requests to limit the length of an examination, particularly where the examiner (to whose expertise the court generally defers) has stated that any such limitation will impede the examination. *Abdulwali*, 193 F.R.D. at 15; *Ornelas v. S. Tire Mart, LLC*, 292 F.R.D. 388, 399 (S.D. Tex. 2013); *Simpson*, 220 F.R.D. at 363 ("The court is not qualified, by training or experience, to second-guess the professional judgment of a board-certified psychiatrist with 15 years of experience"). Although the court is similarly uneasy about dictating to a medical expert the proper way to conduct an examination, the large gap between the time taken by Plaintiffs' expert to conduct his examination and the time requested by Defendant's expert (6-8 hours) does give the court pause. Because the court will require additional information about the proposed examination, *see infra*, it defers a final ruling on whether any time limitations should be imposed.

Finally, Plaintiffs demand that their counsel be informed of the potential universe of tests Dr. Mills may utilize in his examination.[2] The Court in *Ornelas* noted a divide between some courts which "find it appropriate to generically order 'routine procedures" be performed," and those which order the examiner to submit "a list of those potential tests that will comprise the universe of

---

[2] Plaintiffs have agreed their counsel will not share this information with Plaintiffs themselves. (Pls. Opp'n at 6-7).

tests that the examining physicians intend to conduct." 292 F.R.D. 398-99.  Most cases that examine the particular procedures to be performed relate to medical, not psychological, examinations.  *Tarte*, 249 F.R.D. at 860 (considering whether x-rays, MRIs and medical history are within scope of Rule 35); *Calderon v. Reederei Claus-Peter Offen GmBH & Co.*, 258 F.R.D. 523, 529 (S.D. Fla. 2009) (declining to restrict examiner from conducting any "painful or invasive procedure").  *Ornelas* appears to be relatively unique in requiring a catalogue of tests the mental examiner might possibly conduct; the majority of cases defer to the expertise of the examiner and permit "routine" examinations.  *See, e.g.*, *Lahr v. Fulbright & Jaworski, LLP*, 164 F.R.D. 196, 202 (N.D. Tex. 1995) (rejecting plaintiff's challenge to requested examination as overly broad where examiner submitted affidavit attesting to the reasonableness and necessity of the tests to be conducted without specifying particular tests); *Nyfield v. Virgin Islands Tel. Corp.*, No. 99-202, 2001 WL 378858, at *3 (D.V.I. Apr. 17, 2001) (limiting scope of examination to "procedures and testing relevant to Plaintiff's assertion that his damages include mental anguish, pain and suffering, and loss of enjoyment of life including future damage therefrom").  Plaintiffs cited *Abdulwali*, 193 F.R.D. at 15, as another case which permitted a psychiatric evaluation "only because the moving party provided a description of the examination the expert intended to perform." (Pls. Opp'n at 5). While Plaintiffs have accurately cited the holding of the *Abdulwali* case, that case does not support Plaintiffs' apparent demand for a detailed description of the proposed examination.  *Abdulwali* involved a claim for, *inter alia*, negligent infliction of mental anguish brought by the mother of a child who was killed in a Metro train accident.  193 F.R.D. at 12.  Magistrate Judge Robinson considered and denied a request by the plaintiff to preclude the examiner from "asking any questions concerning the accident and restrict[ing] his examination to prior and subsequent medical

5

history," to limit the examination to "interview only" and to exclude completion of any "form, questionnaire or interrogatory." *Id.* at 14.  The court found that none of the requested limitations was necessary because the proposed examination was within the customary bounds of a psychiatric examination, as described by the examining expert:

> A psychiatric evaluation consists of review of all relevant records and documents; gathering of past history including medical history; assessment of present illness to include inquiry into feelings and relationships; formal mental status examination; and formulation of a diagnosis. Psychological testing is not routinely performed.

*Id.* at 15.  Here, Dr. Mills states only that he will "conduct an interview of each subject and…administer only those tests that are necessary" to ascertain the existence and/or extent of any emotional distress.  (Mills Aff. ¶ 7).  This falls short of even the general description of the examination proffered in *Abdulwali*.  Plaintiffs' counsel and the court are entitled to a better sense of how Dr. Mills intends to conduct his examination.  It need not be so specific as to be a catalogue of every possible diagnostic test Dr. Mills intends to use, but it should educate the Plaintiffs and the court as to the sort of examination Dr. Mills expects to conduct.

Accordingly, it is hereby ORDERED that Defendant shall submit, by Friday May 15, 2015, a statement providing the court with more information about the proposed examination.  This statement should not exceed two pages.  Plaintiffs may file a 2-page reply no later than Tuesday, May 19, 2015.  These submissions may be made under seal, and Plaintiffs' counsel shall not share the contents of the submission with Plaintiffs unless and until ordered to do so by the court.  If either party's position concerning the appropriate length of the examination changes in light of Defendant's submission, that party's submission should inform the court of the change.

When Defendant supplements its description of its proposed examination, Defendant shall also provide mutually agreed dates and times for each examination or, if such specificity is not

6

possible, a mutually-agreed range of dates in which the examinations will occur.  The parties shall endeavor to reach agreement as to dates notwithstanding any ongoing opposition the Plaintiffs maintain as to the examinations themselves.

Date:  May 12, 2015

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge